464 P.2d 915

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Danny SANTILLANES and Richard Tony Farmer, Defendants-Appellants.**

No. 361.

Court of Appeals of New Mexico.

Jan. 2, 1970.

Ramon Lopez, Albuquerque, for defendant-appellant Farmer.

Paul A. Phillips, Albuquerque, for defendant-appellant Santillanes.

James A. Maloney, Atty. Gen., Sante Fe, Mark B. Thompson, III, Asst. Atty. Gen., for plaintiff-appellee.

OPINION

SPIESS, Chief Judge.

Defendants, Danny Santillanes and Richard Tony Farmer, were jointly tried to a jury and convicted of violating § 40A–16–2, N.M.S.A.1953 (robbery). Each of the defendants has separately appealed from the judgment; with but one exception to be noted, they present like questions for determination here. Both defendants contend that the trial court erred in denying their motions to dismiss and for directed verdicts. They further contend that the trial court erred in denying their motions for mistrial based upon claimed prejudicial remarks of the prosecutor. The defendant, Farmer, additionally asserts error in the denial of his motion to exclude certain evidence. The motions to dismiss and for di-

rected verdicts challenge the sufficiency of the evidence to support the convictions.

Robbery is "* * * the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." Section 40A–16–2, supra. The facts which merit consideration in determining the issues presented are the following:

Sergeant Ramon Gonzales (U.S.M.C.) returned on leave to Albuquerque from Viet Nam and went directly from the bus station to a bar in downtown Albuquerque, arriving there at about 10:30 p. m. He remained at the bar until approximately 1:45 a. m. According to his testimony he had his wallet with him when he left the bar with $110.00 in it consisting of five twenty dollar bills and one ten dollar bill which he testified he knew had been in his wallet when he left the bus station.

Upon leaving the bar, Gonzales walked toward the bus station. When he reached a point approximately a block from the bar and near the corner of Fifth Street and Central Avenue, he testified that he "* * * turned around and was jumped, and * * * more or less dropped." Upon being asked, "Did you know whoever jumped you or whatever happened?", he answered, "No, I didn't." He further testified that the next thing he remembered was coming to at his home lying on the living room floor bleeding, at which time he found both his wallet and wristwatch missing. He was taken to the hospital, treated for concussion and a broken jaw.

It appears from the testimony of one Edward Sanchez that he had been working as a security man at the bar and left at 1:55 a. m. after the bar had closed. Sanchez drove his car in a northerly direction from the bar and upon reaching a point near the corner of Fifth Street and Central Avenue he said: "* * * I noticed there was this man laying down and there was two other persons on him. When I started parking my car, first they seemed to be helping him. * * * They pulled him back from here to where you are standing. * * *" Sanchez further testified: "* * * I seen them both going through his jacket, one on one side and one on the other. They both passed me on their way running down the alley."

The police were notified and promptly arrived at the corner of Fifth and Central Avenue where Gonzales was found in a semiconscious condition. The police, after interrogating Sanchez, attempted to give aid to Gonzales. A description of the suspects was broadcast over the police radio and Officer Gagliardi and Officer Emsing of the Albuquerque Police Department received the report of the incident. As they proceeded west on Central toward the scene of the crime, Officer Gagliardi testified they "* * * saw two subjects walking at a fast pace, they were walking north and turned into the Court Cafe."

Officer Gagliardi went into the cafe, then into its restroom from which one of the defendants was exiting and in which the other was combing his hair. Gagliardi then left the cafe, went out to confer with Emsing about the description of the subjects. Both officers then went into the cafe and saw the defendants sitting in the booth nearest the restroom. Officer Emsing stood by the booth and Officer Gagliardi went back in the restroom and searched it and there found a wallet, identified by Gonzales as his, in the water tank of the commode. The defendants were then arrested and taken to the city jail. Officer Emsing testified that about five minutes after the arrest had been made he returned to the cafe and began searching the area around the booth in which the defendants had been sitting. In the course of the search he found $110.00 in denominations consisting of five twenty dollar bills and one ten dollar bill stuffed down between the wall and the booth on the side that defendant Farmer was sitting. He likewise found a gold colored Bulova watch, later identified by Gonzales, on the floor in the booth. Santillanes and Farmer

were identified by Sanchez as the two men he saw going through Gonzales' pockets.

The defendants contend that the evidence is insufficient to support the verdicts and that all of the evidence which resulted in their conviction is circumstantial and fails to exclude every reasonable hypothesis consistent with innocence. State v. Seal, 75 N.M. 608, 409 P.2d 128 (1965); State v. Slade, 78 N.M. 581, 434 P.2d 700 (Ct.App.1967).

■■ Proof sufficient to sustain a conviction of the crime of robbery involves proof of two distinct propositions: first, the theft of something of value from the person of another or from the immediate control of another by use or threatened use of force or violence, and, second, such theft being done by the person or persons charged; in other words, proof of the corpus delicti and the identity of the accused. See State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966), cert. denied 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967), and People v. Brooks, 334 Ill. 549, 166 N.E. 35 (1929). Circumstantial evidence may suffice to establish the corpus delicti. State v. Paris, 76 N.M. 291, 414 P.2d 512 (1966). It may also suffice as proof of the identity of the perpetrator of a crime. State v. Williamson, 78 N.M. 751, 438 P.2d 161 (1968), cert. denied 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967).

The evidence which we have related, when viewed in a light most favorable to the State, State v. Favela, 79 N.M. 490, 444 P.2d 1001 (Ct.App.1968), clearly warrants the conclusions that the wallet, together with its contents and the wristwatch, was stolen from the person of Gonzales by use of force and that defendants were the persons who committed the acts. Both corpus delicti and identification of the accused were established by the evidence. It is obvious from this record that the evidence which we have related excludes every reasonable hypothesis other than the guilt of defendants. The authorities cited by defendants in support of this point are not controlling under the facts involved here.

■ Defendant Santillanes further argues that the evidence at best shows only his mere presence at the crime and is therefore insufficient to support a finding that he aided, abetted or assisted in the robbery. We are, of course, aware that if the proof disclosed only the presence of the defendant at the scene of the crime it would not support a conviction. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967).

As we have shown, the evidence discloses that defendant Santillanes, together with defendant Farmer, were seen on Gonzales and going through his jacket; they left the scene of the robbery together, ran past the witness Sanchez, and then ran into an alley. They were found together in the booth by the police at the cafe where Gonzales' property was found. From this evidence the jury, contrary to this contention, could properly find that defendant Santillanes was not simply an innocent bystander but was, in fact, an active participant in the perpetration of the crime.

■ Both defendants contend that the trial court erred in denying their motion for mistrial based upon remarks made by the prosecuting attorney in his closing argument. No record was made of the exact statement. The parties, however, appear to be in agreement that in the opening part of the concluding argument to the jury the prosecutor said "it was a tragic situation when a returning Veteran from Viet Nam could not be safe on the streets of his home town of Albuquerque." Defendants claim that these remarks so inflamed the jury that they were denied a fair trial. We do not agree. It is generally held that in closing arguments counsel are allowed wide latitude in commenting upon the evidence. State v. Anaya, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968).

■ Statements having their basis in the evidence, together with reasonable inferences to be drawn therefrom, are per-

missible and do not warrant reversal. State v. Anaya, supra. The remarks are well within the evidence. The victim was a Veteran returning from Viet Nam to his home in Albuquerque. He did receive a beating and was robbed on the streets of Albuquerque. The event clearly was not improperly characterized by the prosecutor. Compare State v. Fleetwood, 75 Wash.2d 83, 448 P.2d 502 (1968). Defendants cite and rely upon State v. Cummings, 57 N.M. 36, 253 P.2d 321 (1953). This case is clearly distinguishable in that it involved remarks of the prosecutor which were "entirely outside of the evidence."

Defendant Farmer contends the trial court erred in overruling his objections to the " * * * introduction and admission into evidence of State's Exhibits Numbers 1, 2 and 4 * * *" The exhibits referred to are the wallet belonging to Gonzales, his watch and currency, in the same denominations, as was contained in the wallet. These articles were identified as Gonzales' property and the property alleged to have been stolen from him. The argument appears to be that the exhibits were inadmissible because it was not shown that they had been in the possession of defendants or either of them. This argument, considering the record in this case, should have been directed to the weight to be accorded the evidence and not its admissibility. A showing that defendants had possession of the property in the cafe and attempted to destroy or conceal it is clearly a material issue in the case. How much weight should be given to the evidence was a question for determination by the jury. State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967); State v. Tapia, 79 N.M. 344, 443 P.2d 514 (Ct.App.1968); State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct. App.1967).

Accordingly, the judgment of the trial court should be affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.