498 P.2d 1372

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Terry JOHNSON, Defendant-Appellant.**

**No. 830.**

Court of Appeals of New Mexico.

June 23, 1972.

Jack Smith, Edwin E. Piper, Jr., Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Johnson was convicted and sentenced on two separate counts of burglary. Section 40A–16–3, N.M.S.A.1953 (Repl.Vol. 6). He appeals.

We reverse and discharge Johnson as to Count I, and reverse and remand as to Count II.

Johnson claims error in seven respects. Two are dispositive of this appeal. The trial court, (1) failed to direct a verdict of acquittal; (2) failed to grant a severance of Count I and II.

### 1. *Failure to Direct a Verdict of Acquittal*

Johnson was charged by grand jury indictment with the offense of burglary of two different locations on February 3, 1970. Count I was Home Builders Supply, 133 San Pedro Drive, N.E., Albuquerque, New Mexico. Count II was Honeyman Jewelry Company, 6001–J Lomas, N.E., located in a shopping center called Fair Plaza. The two businesses are about one mile apart. The time of the Home Builders burglary

is unknown. The time of the Honeyman burglary was around 3:00 a. m.

### (a) *Home Builders Supply Burglary*

▮ Johnson was arrested at Fair Plaza around 3:00 a. m., a mile from the Home Builders Supply business. We have carefully reviewed the record and we can find no evidence or facts or reasonable inferences to be drawn therefrom which place Johnson at, near, in, or about the Home Builders business the early morning of February 3rd. The circumstantial evidence upon which the state relies does not support the conviction.

The state points to Johnson's possession of a Camalous pocket knife, Model 77, an item held for sale by Home Builders. Its manager could not identify this knife as one taken from the store at the time of the burglary.

Tools were found in a box in Honeyman Jewelry with the name and address of Home Builders on it. The state contends it may be inferred the tools were taken by Johnson from Home Builders. Its manager could not identify any of these tools as taken from the business.

The state relies upon Johnson's clothes being covered with a dust consistent with dust taken from the cinder block wall of Home Builders. There is no evidence to support this contention.

The state finally contends that the method used in accomplishing entry in both burglaries was the same, namely, knocking a hole in the wall, which convicts Johnson of the Home Builders Supply burglary. This has no merit because it constitutes pure conjecture.

The dust and the hole in the wall may raise a suspicion of Johnson's connection with the Home Builders burglary, but we have held that a strong suspicion is not enough. State v. Malouff, 81 N.M. 619, 471 P.2d 189 (Ct.App.1970).

We can find no evidence to support the verdict of the jury. The trial court erred in failing to direct a verdict of acquittal for failure of proof.

### (b) *Honeyman Jewelry Store Burglary*

▮ The Honeyman store was burglarized the early morning of February 3rd. An unauthorized entry was made through the door of an adjoining store of Laube & Freed Opticians which was found in shambles. There was a heavy film of dust on everything. The door had been "popped open." The bolt device was on the outside of the doorjamb with markings on the door frame. A window had chips and markings. You could not push on the door and close it.

Through a wall between the offices of Laube & Freed and Honeyman was a hole 18 x 24 inches. Inside Honeyman, a box of tools was found that had Home Builders address on it. The tools were secondhand hammers, chisels, and a crowbar, the extent of which use was unknown. Also found was wrapping paper and cutting pliers.

On the early morning of February 3rd, a witness who lived on Cardenas to the west side of Fair Plaza was awakened by the noise of a car which stopped across the street from her home. She arose quickly and saw a man run very fast through an archway in the Fair Plaza about 30 feet from Honeyman. Being suspicious she called the police. A police officer arrived at 1:20 a. m., examined the car, a 1962 Chevrolet 4-door sedan. By flashlight he saw cowboy boots and a white dish towel in the front seat. He saw no one and returned to service.

About 3:00 a. m., the witness heard a car again. She arose, but the car was not there. Five minutes later, she heard an alarm, and again called the police. The police officer and other police cars arrived and found the same car parked and unlocked. The cowboy boots and towel were gone. On the back seat was a jacket and hat.

The police also found a pair of gloves on the sidewalk in front of Laube & Freed and a pair in the car with pumice and mortar on them consistent with pumice in Honeyman's and white paint from Laube & Freed.

Honeyman had a burglar alarm to which was hooked the door of the safe, the front door and the rear of the back door. Its

wires had been pulled. An alarm had been heard, but not by the police on arrival at the scene. Johnson did have some experience with burglar alarms.

At the northwest corner of Fair Plaza, two police officers saw Johnson and another man, and they all approached each other near Laube & Freed. The other man had a tire tool in his hand, 24 inches long, flat on one end and silver in color. Johnson said his car was out of gas and they were trying to find a service station open. The other man said he carried the tire tool for protection because they had been assaulted by four men. Their clothing was very dusty and covered with a white powdery material substance. Johnson agreed to allow the police to start the car. It had ⅛ tank of gasoline and it started.

This false explanation by Johnson during his presence near Laube & Freed is a circumstance indicative of guilt. Reid v. Brown, 56 N.M. 65, 240 P.2d 213 (1952); State v. Gonzales, 82 N.M. 388, 482 P.2d 252 (Ct.App.1971).

Mere presence alone near Laube & Freed and Honeyman Jewelry is insufficient to sustain a conviction for burglary. State v. Sedillo, 82 N.M. 287, 480 P.2d 401 (Ct.App. 1971). However, the facts set forth above, and reasonable inferences drawn therefrom, show much more than mere presence. All point toward circumstances to be properly considered by the jury in arriving at a verdict. See State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967); State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966); State v. Serrano, 74 N.M. 412, 394 P.2d 262 (1964); State v. Ocanas, 61 N.M. 484, 303 P.2d 390 (1956).

We must recognize the fact that an offense, like this one, can rarely be proved by witnesses who saw and recognized Johnson in the act of making an unauthorized entry with intent to commit a theft. Ordinarily, it must be proved by circumstantial evidence sufficient to submit the issue to the jury. See dissenting opinion, State v. Grubaugh, 54 N.M. 272, 221 P.2d 1055 (1950).

There is sufficient evidence upon which to submit to the jury the guilt or innocence of Johnson. The trial court did not err in refusing to direct a verdict of acquittal.

### 2. Failure to Grant a Severance of Counts I and II

█ It becomes important to determine whether Johnson was entitled to a severance of the Honeyman burglary from the Home Builders burglary in order to have a fair trial.

Prior to trial, Johnson objected to consolidated trials of Counts I and II, and filed a motion for separate trials of the two burglaries because the alleged felonies occurred at different times and places, and related to property belonging to different owners. At the time trial began, the trial court denied the motion because it did not appear that Johnson would be prejudiced. At the close of the state's case, Johnson renewed the motion. After conviction but before judgment sentence, Johnson filed a motion for arrest of judgment on the same basis. No rulings were made.

The evidence is clear that the burglaries at Home Builders and Honeyman Jewelry occurred at different times and places, and related to property belonging to different owners.

Johnson relies on State v. Paschall, 74 N.M. 750, 398 P.2d 439 (1965).

In *Paschall*, defendant was charged in separate criminal informations of separate felonies alleged to have been committed at widely separated times and places, and involved the property of different owners. He was convicted of four felonies consolidated for trial over defendant's strenuous objection. The Supreme Court held the trial court abused its discretion in denying severance of offenses, and reversed. The rule on severance was stated as follows:

It is permissible to charge separate offenses in a single information if they relate to the same transaction or event, or to connected transactions and, under some circumstances not pertinent here,

they may be tried together before the same jury. [Citing cases]. But, correlatively, two or more separate and distinct felonies occurring at different times and places, and relating to property belonging to different owners, may not be jointly tried over the defendant's objection. [Citing cases.]

\* \* \* \* \* \*

It is fundamental, however, that courts must not permit a defendant to be embarrassed in his defense by a multiplicity of charges to be tried before one jury.

\* \* \* \* \* \*

It would seem to us that in the very nature of things it cannot be said that the defendant in this case was not prejudiced in his defense by consolidation for trial of these separate charges.

We specifically note that *Paschall* did not require a hearing on a motion for severance. Neither did it mention that the defendant had the burden of specifically establishing prejudice upon failure to allow severance. The above language of *Paschall*, however, does not mean that we must hold as a matter of law that Johnson was prejudiced. It need only be shown that a denial of severance resulted in prejudice to Johnson. State v. Sero, 82 N.M. 17, 474 P.2d 503 (Ct.App.1970).

In State v. Sero, supra, and State v. Silver, 83 N.M. 1, 487 P.2d 910 (Ct.App. 1971), we held that a denial of severance was not prejudicial because the defendant was acquitted on one or more charges. The jury was able to follow the evidence. This is a strong factor that a denial of severance was not prejudicial and did not constitute an abuse of discretion.

■ Here, Johnson was found guilty on both counts. Evidence of facts pertaining to the alleged Home Builders burglary was interspersed in the alleged Honeyman Jewelry burglary. This consisted of, (1) tools with price tags of Home Builders in a box which had the name and address of this business on it; (2) a hole in Home Builders being similar to the hole in Honeyman;

(3) testimony of witnesses relative to the alleged Home Builders burglary. We cannot say that the jury did not consider the proof submitted regarding the Home Builders burglary with the Honeyman Jewelry burglary. "The very nature of things" does establish that Johnson was prejudiced in defending against both counts because the alleged Honeyman burglary was submitted on circumstantial evidence.

American Bar Association project on Minimum Standards for Criminal Justice relating to approved standards for Joinder and Severance are set out in part in the concurring opinion of State v. Silver, supra. On pages 31 and 32 of the Commentary on the standards, the authors stated:

Two of the most compelling reasons for granting the defendant this right of severance without any *specific* showing of prejudice in his case are:

(1) Undue limitations on the defendant's right to testify in his own behalf. Cross v. United States, [118 U.S.App. D.C. 324] 335 F.2d 987, 989 (D.C.Cir. 1964).

\* \* \* \* \* \*

(2) [P]rejudice through introduction of evidence which fails to meet the other crimes test. Drew v. United States, [118 U.S.App.D.C. 11] 331 F.2d 85, 90 (D.C.Cir.1964). In *Drew* the court concluded that the defendant had been prejudiced because he was required to stand trial on two separate robberies at the same time. Had the defendant been prosecuted on each robbery separately, the evidence of the other crime would not have been admissible under the other crimes rule. Thus by joining the unrelated offenses together for trial, the prosecution brought about the evil to be avoided by the general rule that evidence of other crimes is not admissible: *"the likelihood that juries will make \* \* \* an improper inference."* See Note, 74 Yale L.J. 553, 556–57 (1965). [Emphasis added].

The above rules are compatible with *Paschall*, and applicable to this case. The

trial court's denial of severance of Counts I and II was prejudicial to Johnson's defense and constituted an abuse of discretion.

Johnson's other claims of error are related to the Home Builders burglary or have no merit on a retrial of this case.

The conviction and sentence on Counts I and II are reversed. Since we reverse Count I for failure of proof, rather than error in the trial proceedings, this cause is remanded with instructions to discharge Johnson on Count I. State v. Malouff, supra.

Johnson is entitled to a new trial on Count II, the Honeyman burglary.

It is so ordered.

HENDLEY, J., concurs.

WOOD, C. J., dissenting.

WOOD, Chief Judge (dissenting).

The majority hold there was sufficient evidence to sustain the conviction of defendant for burglarizing the jewelry store. I agree. The majority hold there is insufficient evidence to sustain defendant's conviction for burglarizing Home Builders Supply. I disagree. The majority reverse defendant's conviction for the jewelry store burglary on the basis that trial of the two burglary charges should have been severed. I disagree.

*Evidence connecting defendant with Home Builders Supply burglary.*

When arrested, defendant had in his possession a pocketknife of the brand and model sold by Home Builders Supply. Within the jewelry store various tools were found that had Home Builders price tags on them. At trial, the manager of Home Builders Supply was unable to state that the pocketknife or the tools were taken in the burglary of Home Builders Supply. The majority seize on the inability of the manager to make positive identification to eliminate the pocketknife and tools as evidence connecting defendant with the Home Builders Supply burglary.

The following demonstrates that the majority failed to consider all of the evidence.

(a) The manager testified that an inventory was made of items missing after the burglary. He did not bring his copy of the inventory to the trial, but did testify that some of the items in evidence (the pocketknife and the tools) matched the description of items " * * * that showed up missing in * * * [the] inventory."

(b) With respect to the pocketknife, Officer Thompson testified that he was furnished a list of items taken in the burglary, that this list was included in his investigative report and that a pocketknife of the same brand and model found in defendant's possession was one of the items reported as missing. Defendant complains that Officer Thompson's testimony was erroneously admitted, but the objection raised on appeal was never presented to the trial court. It will not now be considered. State v. Williams, 83 N.M. 477, 493 P.2d 962 (Ct.App.1972).

(c) A photograph in evidence shows the glass on the knife display case at Home Builders Supply had been broken and there is evidence this occurred in the burglary.

(d) The tools with Home Builders Supply price tags, found in the jewelry store, are characterized by the majority as " * * * secondhand * * *, the extent of which use was unknown. * * * " While this statement may be technically correct, it disregards the fact that the tools are in evidence and were viewed by the jury and that a view of the tools did not require the jury to characterize the tools as the majority does. The tools are little scratched, there are no sweat marks on the handles and their appearance would support an inference of being little used—specifically, their appearance is that of new tools used only once.

The manager testified the wall of Home Builders Supply was of block and the FBI witness testified the dust on defendant's clothing was consistent with dust from block walls. The method of entry in both burglaries was the same; holes were

knocked through walls. The majority characterize the dust and the method of entry as no more than suspicion. If these two items stood alone I would agree, but they do not stand alone.

Further, an item not discussed by the majority in connection with the Home Builders Supply burglary is that there is sufficient evidence to sustain defendant's conviction for burglary of the jewelry store.

On review, we are to view the evidence in the light most favorable to the verdict. State v. Sedillo, 82 N.M. 287, 480 P.2d 401 (Ct.App.1971). Applying this rule, there is evidence that defendant burglarized the jewelry store. This connects defendant with the little used tools, bearing Home Builders Supply price tags, which were of the same description as some of the tools taken in the burglary of Home Builders Supply. In addition, defendant possessed a pocketknife of the same brand and model listed as taken in the burglary of Home Builders Supply. Further, defendant entered the jewelry store by knocking a hole in a block wall; Home Builders Supply was entered in the same way. Finally, the dust on defendant's clothes was consistent with dust from block walls.

In my opinion, the foregoing evidence is sufficient to sustain the conviction of defendant for the Home Builders Supply burglary.

*Severance.*

Prior to trial, defendant moved for separate trials on the two burglary charges on the basis that: " * * * two or more separate and distinct felonies occuring [sic] at different times and places and relating to property belonging to different owners may not be jointly tried over Defendant's objection." The hearing on this motion consisted of arguments of counsel. At that hearing, the State referred to items of evidence it intended to introduce and asserted it would rely on a "common scheme or plan." With this record, the trial court did not err in denying defendant's motion, even

under State v. Paschall, 74 N.M. 750, 398 P.2d 439 (1965).

By motion subsequent to trial, defendant again raised the severance issue, asserting the trial court " * * * erred in trying the two separate and distinct charges together at the same trial." The majority opinion does not make it clear which of defendant's motions raised the severance issue for appellate review. In my opinion, the issue is before us on the basis of the post-trial motion.

In holding there should have been a severance, the majority rely, in part, on commentaries from the American Bar Association Standards of Criminal Justice. Their authority for doing so is a specially concurring opinion in State v. Silver, 83 N.M. 1, 487 P.2d 910 (Ct.App.1971). The specially concurring opinion considered the American Bar Association Standards as authoritative because the Standards had been approved in Colorado " * * * and *may* be approved by the Supreme Court of New Mexico. * * *" (Our emphasis). This bootstrap attempt at giving authority to the Standards in New Mexico is erroneous. The New Mexico Supreme Court has not adopted the American Bar Association Standards. Instead, it adopted its own Rules of Criminal Procedure to become effective July 1, 1972. Rule 10 of these rules, entitled "Joinder of Offenses" would be applicable if the New Mexico rules applied to this case. New Mexico commentaries are not yet available to this Court. But the New Mexico rules do not apply because they are not yet in effect. In my opinion, the majority proceed improperly when it discusses the severance issue in relation to American Bar Association Standards, but ignore New Mexico Rules of Criminal Procedure.

The severance issue in this case is controlled by New Mexico decisions. The New Mexico decision on which the majority rely, as did the defendant in the trial court and in this appeal, is State v. Paschall, supra. This reliance is misplaced. In Paschall, supra, defendant was charged

in four informations with six separate crimes. Two of the charges pertained to property of Fair Oil Company. Of these two charges, one was a charge of larceny of the property, the other was a charge of receiving and concealing that property. The joinder of these two charges was *not* held to be error. The error in joinder was in connection with the remaining four charges. These four charges were of separate and distinct felonies occurring at different times and places, and related to property belonging to different owners. The majority apply this decisional ground of *Paschall* in this case.

In doing so, they ignore the statements in Paschall, supra, indicating connected transactions can be tried together. Such a connection occurs when the charges as to the distinct offenses are provable by the same evidence. State v. Paschall, supra; State v. Sero, 82 N.M. 17, 474 P.2d 503 (Ct.App. 1970). In this case, evidence that defendant committed the jewelry store burglary was admissible to prove defendant's connection with the burglary of Home Builders Supply. Because of this connection, the majority, in my opinion, apply Paschall, supra, erroneously.

The majority, properly, address the question of prejudice to the defendant and abuse of discretion by the trial court. " * * * The denial of the request for severance is not a basis for reversal unless abuse of discretion and prejudice is shown. * * *" State v. Silver, supra. The majority hold there is prejudice and abuse of discretion because evidence as to the burglary of Home Builders Supply "was interspersed" with evidence as to the jewelry store burglary. " * * * The fact alone that evidence of two separate crimes is before the jury does not afford proof of legal prejudice. * * *" State v. Brewer, 56 N.M. 226, 242 P.2d 996 (1952); State v. Gunthorpe, 81 N.M. 515, 469 P.2d 160 (Ct. App.1970), cert. denied, 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971). Nor can the evidence of two separate crimes, without more, amount to an abuse of discretion. Here, the claim is based on the evidence of two separate crimes being combined in one trial. Since that is insufficient, in my opinion, the majority err in holding there was prejudice and abuse of discretion.

For the foregoing reasons, I dissent.